UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER WILLIAM BLAKNEY, | 4:17-CV-04022-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING IN PART MOTION TO DISMISS |
| DARIN YOUNG, WARDEN, SOUTH DAKOTA STATE PENITENTIARY; and JASON RAVNSBORG, ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA, | |
| Defendants. | |

Plaintiff Christopher William Blakney (Blakney) filed a petition for habeas corpus under 28 U.S.C. § 2254(b) against Darin Young, in his capacity as Warden of the South Dakota State Penitentiary, and Marty J. Jackley[1], in his capacity as Attorney General of the State of South Dakota, alleging that his incarceration pursuant to a state court revocation of suspended sentence violates his constitutional right to due process. Doc. 1. This Court previously granted in part a motion to dismiss, allowing those claims which Blakney exhausted in state court to proceed in federal court and dismissing Blakney's remaining unexhausted claims as frivolous. Doc. 11. Defendants then filed a motion to dismiss on the merits. Doc. 13.

I.    **Judicial notice of state court files.**

---

[1] Under Federal Rule of Civil Procedure 25(d), the newly elected Attorney General of South Dakota, Jason Ravnsborg, is automatically substituted as the party defendant for former Attorney General Marty Jackley.

Part of what the Defendants filed alerted this Court to Blakney's related habeas case against Darin Young filed in state court in 2016, as Minnehaha County civil case 16-859, in which Blakney makes claims of a violation of Brady v. Maryland and of an illegal or ambiguous sentence. Doc. 8-27. This Court was interested in the status of Blakney's state court habeas case because of the deferential nature of federal court review of a state court conviction under 28 U.S.C. § 2254, and because of the preference for state courts to correct constitutional defects in state convictions first to avoid the "unseemly" disruption of state judicial proceedings through premature federal court intervention. Rose v. Lundy, 455 U.S. 509, 518 (1982) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). Thus, this Court wanted to see the outcome of Minnehaha County civil case 16-859 to determine whether any state court ruling had granted relief to Blakney or would impact this Court's review.

In seeking out public information on Minnehaha County civil case 16-859, a law clerk for this Court learned of other civil cases filed in state court by Blakney challenging his detention and sentence. The Minnehaha County Clerk of Court then sent to this Court's Clerk of Court all filed pleadings and transcripts in Blakney's two most recent Minnehaha County criminal cases, 11-4923 and 11-4924, as well as all pleadings filed in Minnehaha County civil cases, 16-859, 17-2981, 18-1596, 18-2633. These files are on what is called the "N" drive of the District of South Dakota, not subject to public view in order to protect personal identifying information—names of juveniles, dates of birth of Blakney and possibly others, and addresses—that might appear in some pleadings.[2] These files are public information available through the Minnehaha County Clerk of

---

[2] When citing these materials, this Court will reference the state court criminal or civil case number followed by the date of the pleading or transcript when not otherwise clear from the text of this Opinion and Order. This Court will use "Doc. ___ " to reference whether and where in the public CM/ECF system of this Court the document cited may be found.

Court, consisting of pleadings and documents filed by Blakney, the Defendants, the state court (transcripts and orders), and the Minnehaha County State's Attorney.

With Blakney proceeding pro se and with limited records submitted by the Defendants, this Court believed it appropriate to take judicial notice of the state court records now on this Court's "N" drive under Rule 201 of the Federal Rules of Evidence. Under Rule 201(b), the Minnehaha County Clerk of Court's official records of Blakney's criminal and civil cases are "not subject to reasonable dispute" and from a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under Rule 201(c), this Court "may take judicial notice on its own," and under Rule 201(d) may do so "at any stage of the proceeding." Id. 201. Rule 201(e) entitles the parties to be heard on the propriety of taking judicial notice. Id. 201(e). Accordingly, this Court, on February 22, 2019, issued an Order, Doc. 16, giving the parties fourteen calendar days within which to object to this Court taking judicial notice of Minnehaha County criminal files 11-4923 and 11-4924, and of Minnehaha County civil files 16-859, 17-2981, 18-1596, and 18-2633. Neither Blakney nor the Defendants objected, so this Court now takes judicial notice of those state case files in order to provide a full recount of the procedural and substantive background of Blakney's convictions, sentences, revocations, incarceration, and challenges thereto.

## II. Blakney's state court history.

### A. Initial criminal cases and sentences.

Blakney's state-court odyssey relating to claims in this § 2254 case began with his indictment in two separate Minnehaha County criminal cases on September 1, 2011. State CR 11-4923; State CR 11-4924. In one case, Blakney was charged with second degree rape allegedly perpetrated on July 16, 2011, of then sixteen-year-old J.K.G. State CR 11-4923. In the other case, Blakney was charged with one count of second-degree rape, one count of aggravated assault, and

three counts of simple assault for allegedly raping his girlfriend, T.S., threatening her with a boxcutter, and committing other domestic assaults against her, all on August 2, 2011. State CR 11-4924; Doc. 8-1. In both criminal cases, the state's attorney filed a Part II information for habitual criminal based on Blakney's four prior felony convictions, including three grand theft convictions in 1996 and 1997, and a possession of controlled substance felony conviction in 2010. State CR 11-4923; State CR 11-4924; Doc. 8-2.

Blakney, with the assistance of counsel, reached a plea agreement to resolve the charges in both of his state criminal cases. Under the plea agreement, Blakney entered an Alford plea.[3] Consistent with the plea agreement, the Honorable Robin J. Houwman on November 30, 2011, accepted Blakney's guilty plea to a class-one misdemeanor in State CR 11-4923 of simple assault on J.K.G. Judge Houwman sentenced Blakney in State CR 11-4923 on that same date (although memorialized in a judgment and sentence dated December 29, 2011) to incarceration of 364 days, suspended upon conditions that Blakney commit no class-one misdemeanors or greater for a period of two years, commit no violent offenses for a period of two years, have no contact with the victim for a period of two years, pay certain costs, and comply with terms of a two-year probationary period. Relatedly, in State CR 11-4924, consistent with the plea agreement, Blakney pleaded guilty before Judge Houwman on November 30, 2011, to just the aggravated assault count and was sentenced on the same day. A judgment and sentence dated December 29, 2011, memorializes that Blakney received in State CR 11-4924 a sentence of thirteen years, suspended on the performance of fourteen listed conditions. As matters most directly to Blakney's present § 2254 case, condition one stated:

---

[3] An Alford plea is named after the case of North Carolina v. Alford, 400 U.S. 25 (1970), under which a defendant pleads guilty not upon an admission to the facts of the crime, but admitting that the prosecutor has sufficient evidence to make the charge and obtain a conviction.

1. That the defendant sign and abide by the standard supervised probation agreement with the Court Services Department for twenty-four (24) months.

Doc. 8-3. In turn, paragraph one of the standard supervised probation agreement provided: "You shall obey all federal, state, and tribal laws and municipal ordinances." Doc. 8-4. Blakney's other conditions of suspended sentence included that he serve 120 days in the Minnehaha County Jail, with credit for 97 days previously served, that he pay certain costs and fees, that he submit to drug and alcohol testing, and that he use no controlled substances. State CR 11-4924; Doc. 8-3. Three of the final terms for the suspended sentence were the following:

11. That the defendant complete any evaluation, counseling, anger management or participation in 24/7 program as directed by the Court or the Court Services Officer.
12. That the defendant commit no class one misdemeanors or greater for a period of ten (10) years.
13. That the defendant commit no violent offenses for a period of ten (10) years.

State CR 11-4924; Doc. 8-3. As a consequence of the plea agreement, the charges in the indictment in State CR 11-4923 and in counts one, three, four, and five in State CR 11-4924 were dismissed.

**B. Prior revocation petitions and reversal of imposition of suspended sentence.**

Blakney faced his first motion to revoke suspended sentence on January 17, 2012, based on a violation report concerning a positive test for methamphetamine use. State CR 11-4923; State CR 11-4924. That motion to revoke suspended sentence, however, was dismissed on January 25, 2012. State CR 11-4923; State CR 11-4924.

With regard to State CR 11-4924 only, Blakney faced a second motion to revoke suspended sentence filed on November 14, 2012. State CR 11-4924; Doc. 8-5. The violation report set forth that Blakney had completed an assessment at Compass Center, and his probation officer had directed him to follow a recommendation to participate in a sex offender program, but Blakney had refused to do so. State CR 11-4924; Doc. 8-5. On April 20, 2013, the Honorable Patricia

Riepel revoked Blakney's suspended sentence due to his failure to complete a sex offender evaluation and imposed the suspended sentence of thirteen years with credit for 196 days served. State CR 11-4924; Doc. 8-6. Blakney appealed the revocation of his sentence to the Supreme Court of South Dakota. Doc. 8-7. The Supreme Court of South Dakota split 3-2 with the majority voting to reverse the revocation of the suspended sentence because there was no condition in his sentence that Blakney undergo sex offender evaluation or attend a sex offender program and because there consequently had been an improper delegation of sentencing authority to a probation officer to impose such conditions on Blakney after sentencing. State v. Blakney, 851 N.W.2d 195, 199–200 (S.D. 2014); Doc. 8-12. The two dissenting justices believed that Blakney had failed to adequately preserve the issue below. Blakney, 851 N.W.2d at 200–01; Doc. 8-12.

Judge Riepel on remand entered an order vacating the revocation of the suspended sentence on July 30, 2014. State CR 11-4924; Doc. 8-13. Blakney had been in state custody during the pendency of that revocation and appeal. By July 30, 2014, more than two years had passed since Judge Houwman had sentenced Blakney back on November 30, 2011, and since Judge Houwman signed the judgment on December 29, 2011. Blakney likely had completed his initial 120-day sentence around December 29, 2011. Under South Dakota law, Blakney's probationary period in State CR 11-4923 and under condition one of the conditions of suspended sentence in State CR 11-4924 appears to have run. See SDCL § 23A-27-19.1 (listing circumstances under which probationary periods may be tolled, but not listing as a circumstance time a defendant sits in custody prior to a reversal of an improper imposition of suspended sentence); see also Doc. 8-24 at 23 (State appellate brief acknowledging Blakney on "unsupervised probation" after two-year period ran).

C.  Current revocation of suspended sentence.

The State revoked Blakney's suspended sentence a second time due to Blakney's behavior on October 31, 2014. There is no dispute of material fact as to what occurred on October 31, 2014, but issues only on whether Blakney received due process and whether the evidence was sufficient to support revocation.

The initial procedural oddity with Blakney's most recent revocation of suspended sentence relates to the condition initially alleged to have been violated. In State CR 11-4924, the motion to revoke suspended sentence attached a violation report contending that Blakney had violated the first paragraph of the conditions of adult probation that "You shall obey all federal, tribal, state laws and municipal ordinances." Doc. 8-16. The terms of adult probation, however, were incorporated into conditions of Blakney's suspended sentence pursuant to paragraph one of the judgment and sentence imposed on November 30, 2011 and formalized in writing on December 29, 2011—that Blakney "abide by the standard supervised probation agreement with the Court Services Department for twenty-four (24) months." Doc. 8-3. The behavior on October 31, 2014 fell outside of the 24-month period regardless of whether it began on November 30, 2011, or on December 29, 2011.

Judge Riepel again presided over the motion to revoke the suspended sentence and appointed counsel for Blakney. The state court held an advising and bond hearing on November 10, 2014, advising Blakney of the allegation that his arrest on October 31, 2014 for simple assault and driving while revoked was a violation of condition one of his release. Doc. 8-17. Blakney denied the violation and an evidentiary hearing on the motion to revoke suspended sentence occurred on December 9, 2014. At that hearing Blakney's counsel argued that the condition alleged for revocation of the suspended sentence—that he abide by conditions of probation for 24 months, which in turn required obeying all state laws and municipal ordinances—did not apply to

7

him in October of 2014. Blakney appears to have first raised that issue after Judge Riepel heard testimony from the three witnesses at the revocation hearing. See Doc. 8-18 at 35–37.

Again, there is little factual dispute about what occurred on October 31, 2014, and most of the testimony during the December 9, 2014 hearing was not contested. In October of 2014, Blakney was living with Sharrie Kilmer in a household that included her 17-year-old daughter D.K. During the morning of October 31, 2014, Kilmer was getting ready for work, and Blakney became angry with her.[4] Kilmer had moved from her bedroom into the bathroom, and Blakney had followed her, continuing to argue in a raised voice. Kilmer's daughter, D.K., who had seen Blakney be physical with her mother previously, chose to go into the bathroom to be with her mother.[5] Blakney told D.K. to get out of the bathroom, and as D.K. put it, she copped an attitude by saying "whatever." Blakney jumped up from where he was sitting on the toilet and confronted D.K. saying "what did you say to me?" D.K. then left the bathroom and was in the process of shutting the door with her fingers in the area where the door knob was, with the bulk of her hand on the outside portion of the door and the ends of her fingers on the inside portion of the door. Meanwhile, Blakney turned away from the door to face Kilmer and continue the argument. Blakney then horse kicked the bathroom door with his back to it. The door slammed shut on D.K.'s fingers and she screamed in pain. Blakney was immediately apologetic saying that he did not mean to hurt her. Blakney did not hit Kilmer that day. D.K. went to the emergency room because her fingers were badly bruised, although they were not broken. Lincoln County Sheriff's

---

[4] Kilmer during the evidentiary hearing could not recall why there was an argument. While speaking with police on October 31, 2014, however, Kilmer said that the argument started when Blakney probed why she had missed a meeting with a counselor, heard Kilmer explain that she had called the counselor to cancel the meeting, then learned by reviewing Kilmer's phone log that she had not in fact called the counselor, and thereafter confronted Kilmer about lying to him.

[5] There was a house rule about only smoking in the bathroom, and Blakney's counsel suggested that D.K. came into the bathroom to smoke a cigarette.

Deputy E.J. Colshan arrested Blakney on a simple assault charge after Blakney had left for work that day. Deputy Colshan learned that Blakney was driving with a license that was revoked[6] and cited him on that offense as well. After receiving a <u>Miranda</u> warning, Blakney spoke voluntarily with Deputy Colshan and confirmed what had occurred.

Following this testimony at the hearing on the motion to revoke, Blakney had no witnesses. Doc. 8-18 at 33. The State argued that condition one had been violated by Blakney acting recklessly to commit simple assault and driving with a revoked license, both of which would be state or municipal law violations. Doc. 8-18 at 33–34. Blakney's counsel countered that the two-year period applicable to condition one had expired and that no violation could be found. Doc. 8-18 at 35–36. Judge Riepel then raised the possibility of the State amending the grounds of the motion to revoke to include other grounds than violation of condition one, the State sought to do so, and Blakney's counsel objected. Doc. 8-18 at 37–38. Judge Riepel offered Blakney an opportunity to call other witnesses. Doc. 8-18 at 40–41. Blakney's counsel objected based on a due process violation and argued that Blakney kicking the door was not a criminal offense and that regardless no class-one misdemeanor conviction nor a violent offense conviction supported revocation of the suspended sentence based on condition number twelve or thirteen (two of the additional grounds suggested for revocation). Doc. 8-18 at 45–49. Judge Riepel explained why she thought there was a basis for Blakney's conduct to be a class-one misdemeanor and deemed simple assault to have been committed under SDCL § 22-18-1(2) by recklessly causing bodily injury. Doc. 8-18 at 49–51. Judge Riepel ruled that Blakney violated an implied condition of

---

[6] Judge Riepel later determined that she could not accept Deputy Colshan's testimony about Blakney's license being revoked because it was hearsay being offered for the truth of the matter asserted. Doc. 8-18 at 40.

good behavior for a suspended sentence[7] and conditions twelve and thirteen of the conditions of suspension of the sentence. Doc. 8-18 at 51. Judge Riepel deferred ruling on whether driving while having a revoked license could support revocation. Doc. 8-18 at 51−52.

Although the evidentiary hearing on the motion to revoke concluded on December 9, 2014, with an apparent decision from Judge Riepel to revoke the suspended imposition of sentence based on violations of paragraphs one, twelve, and thirteen of the prior judgment and an implied condition of good behavior, the formal amended motion to revoke suspended sentence was not filed until April 24, 2015. State CR 11-4924; Doc. 8-19. The underlying criminal file, State CR 11-4924, reflects that after the December of 2014 evidentiary hearing, Judge Riepel held additional hearings on April 24, 2015; June 5, 2015; and June 12, 2015. State CR 11-4924. The hearings on April 24 and June 5 were relatively brief and non-evidentiary, and the sentencing on the revocation of the suspended sentence occurred on June 12, 2015. Judge Riepel signed a bench-order judgment of conviction and penitentiary sentence on June 12, 2015, imposing the thirteen-year sentence, with 898 days credited; Judge Riepel entered a formal order revoking suspended sentence then on June 30, 2015. Doc. 8-20; Doc. 8-21. Blakney filed a notice of appeal. Doc. 8-22.

At the June 12 sentencing hearing, Blakney's attorney and Judge Riepel had a discussion about the basis on which Judge Riepel was revoking the suspended imposition of sentence. Blakney's counsel and Judge Riepel differed on whether the specific violations were addressed at the evidentiary hearing, and whether Blakney was aware that the State was proceeding to allege violations of conditions twelve and thirteen of the suspended imposition of sentence at the time of the evidentiary hearing. Judge Riepel summarized her prior ruling and her reasoning as follows:

---

[7] Judge Riepel was drawing this implied condition from state decisions such as In re Adams, 360 N.W.2d 513 (S.D. 1985), and State v. Holter, 340 N.W.2d 691 (S.D. 1983).

So it's a strict violation of probation based upon what I found at the hearing [on December 9, 2014], violation of condition number 1, obey all state and federal laws. I further found that he violated the other conditions of his probation, subsection 12 and 13.

Now, the Supreme Court can say one of two things, that because the State didn't put 13 and 14 [sic, should be 12 and 13] in that initial motion that the Court couldn't have made a ruling on that. I'm still saying that I am entitled to find him in violation of the law based on the fact that he is on probation and he's required to obey all laws and I think that's the way it is.

The fact that he now – the State had filed an amendment and you're asking me to recuse myself, I'm going to deny that. We have had a contested hearing and I have sat on the case and I am going to proceed on the case.

State CR 11-4924, June 12, 2015 sentencing, at 9. Blakney's counsel argued that there were no convictions from Lincoln County for any of Blakney's behavior on October 31, 2014, and Judge Riepel responded by questioning whether there was a need for an actual conviction to revoke the suspended imposition of sentence. Id. at 23.

Blakney's appeal from this second revocation of suspended sentence to the Supreme Court of South Dakota included arguments by Blakney's counsel that Judge Riepel's handling of the revocation of the suspended sentence violated Blakney's due process rights in several respects. Doc. 8-23; Doc. 8-25. The State in its brief acknowledged that "[a]ll parties agreed defendant was on unsupervised probation at the time the State filed the Motion to Revoke Suspended Sentence." Doc. 8-24 at 23. That is, the State effectively acknowledged that Blakney's formal two-year period of probation had run under the conditions of adult probation and condition one of the sentence in State CR 11-4924. The State argued that nevertheless under conditions twelve and thirteen, there were grounds to revoke the suspended sentence. Doc. 8-24. The Supreme Court of South Dakota affirmed summarily without opinion on November 14, 2016. Doc. 8-26.

### D. Blakney's State post-sentence civil cases.

Blakney has filed a number of civil cases in state court challenging and concerning his convictions and sentences. In State CIV 16-859, Blakney filed a state court habeas corpus petition

contending that his conviction on State CR 11-4923 was based on a <u>Brady</u> violation. In connection

with that case, Blakney filed a copy of an email dated August 26, 2011, ostensibly sent by the

sixteen-year-old alleged rape victim, J.K.G., reading "I need to know how to go about to drop all

charges on cgris [sic] blakney . . it was consentual [sic] sex." For the sake of context, the grand

jury indictment was dated September 1, 2011, and reflected that J.K.G. testified to the grand jury.

This Court of course does not know if J.K.G. did or did not author that email. The Honorable

Joseph Neiles declined to grant state habeas relief because the probationary time on the simple

assault conviction arising from State CR 11-4923 had run, and the habeas corpus filing was not in

front of the original judge and did not name the warden. Judge Neiles noted as well that the State

was asserting that the victim either did not send the email or recanted its claims. State CIV 16-

859.

Blakney then brought a similar claim in State CIV 18-1596 as a writ of coram nobis to the

original sentencing judge, Judge Houwman. Judge Houwman denied the writ, writing

"[r]egardless of whether the prosecutor possessed this email or whether it should have been

disclosed to the defense, Petitioner plead guilty to Simple Assault, not the original Rape charge."

Blakney attempted to appeal from the denial of writ of coram nobis. It appears that the appeal was

dismissed for improper service of the notice of appeal. State CIV 18-1596.

Blakney also has filed a civil case, State CIV 18-2633, that challenges the parole board's

determination of his initial parole eligibility date. That administrative appeal does not impact the

issues in this § 2254 case.

As it relates to Blakney's issues surrounding his revocation of the suspended imposition of

sentence, Blakney filed a state court petition for writ of habeas corpus as State CIV 17-2981.

There, Blakney alleges ineffective assistance of counsel and that his sentence was ambiguous and

internally contradictory in violation of his Fifth and Fourteenth Amendment rights to due process. That case has proceeded slowly, with delays in the appointment and then recusal of counsel for Blakney.

## III. Discussion

This Court previously ruled that Blakney exhausted grounds two, three, four, six, seven, eight, and nine of his § 2254 habeas corpus petition. Doc. 11. Those seven exhausted claims can be grouped as raising three general challenges: 1) that the state court lacked jurisdiction and thus offended due process by proceeding to revoke Blakney's suspended sentence after the two-year probationary period ended; 2) that the state court violated due process by proceeding on condition one (which had expired) and not conducting a preliminary hearing on conditions twelve and thirteen later used by the state court to revoke the suspended sentence; and 3) that there was constitutionally insufficient evidence to conclude that Blakney had violated any of the conditions, let alone committed a class-one misdemeanor or a violent offense under conditions twelve and thirteen.

### A. Applicable law.

When a claim has been adjudicated on the merits in a state court, a petition for writ of habeas corpus under § 2254 cannot be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To make a showing that a state court made an unreasonable determination of the facts, a petitioner must present clear and convincing evidence that "the state court's

presumptively correct factual finding lacks evidentiary support." Trussell v. Bowersox, 447 F.3d 588, 591 (8th Cir. 2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) present distinct questions. Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 404–05 (2000)). A state court's legal determination is contrary to federal law if it reaches the opposite conclusion of the Supreme Court on a question of law, or if, when confronting materially indistinguishable facts as a case decided by the Supreme Court, it reaches a different conclusion. Williams, 529 U.S. at 405. If a state court correctly identifies the controlling legal principle, but applies it to the facts of a case in an unreasonable manner, then the decision runs afoul of the "unreasonable application" clause of § 2254(d)(1). Id. at 407–08. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Williams, 529 U.S. at 410). This is a "highly deferential standard" that is "difficult to meet." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). Evaluation of a state court's application of federal law focuses on "what a state court knew and did . . . measured against [the Supreme] Court's precedents as of 'the time the state court render[ed] its decision.'" Id. at 182 (quoting Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003)). "If a claim has been adjudicated on the merits by a state court," a federal habeas petitioner must show the state court's legal determination was deficient "on the record that was before that state court." Id. at 185.

Blakney has a right to due process in proceedings about whether he violated conditions of his suspended imposition of sentence. A series of cases from the Supreme Court of the United States, beginning with Morrissey v. Brewer, 408 U.S. 471 (1972), recognize a due process right

during such revocation proceedings.  Most recently, the Supreme Court of the United States has characterized the right as follows:

> There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.  When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures.

Swarthout v. Cooke, 562 U.S. 216, 220 (2011) (per curiam); see Black v. Romano, 471 U.S. 606, 610 (1985) ("The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation.").  Although the Supreme Court decisions typically have dealt with revocations of probation or parole, the revocation of a suspended imposition of sentence, as occurs under South Dakota procedure, is substantially similar and governed by the same principles.  See, e.g., State v. McCormick, 385 N.W.2d 121, 123–24 (S.D. 1986) (applying principles of Morrissey to revocation of suspended imposition of sentence in South Dakota).

In Morrissey, the Supreme Court deemed the "minimum requirements of due process" in a revocation proceeding to include:  (a) written notice of the claimed violation to the individual; (b) disclosure to the individual of evidence against him; (c) the opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses; (e) a neutral and detached hearing body or judge; and (f) a written statement by the fact finder as to the evidence relied on and the reasons for the revocation.  Morrissey, 408 U.S. at 489; see Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973).  In Gagnon, decided one year after Morrissey, the Supreme Court recognized that a person facing revocation was entitled to two hearings: 1) a preliminary hearing at the time of the arrest and detention to determine if probable cause exists for the revocation; and 2) a "somewhat more comprehensive hearing prior to the

making of the final revocation decision." Gagnon, 411 U.S. at 781−82. "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." Id. at 781 (quoting Morrissey, 408 U.S. at 480). Therefore, the Supreme Court has made clear that a person facing revocation is not due a "full panoply of rights." Morrissey, 408 U.S. at 480.

The same year that the Supreme Court decided Gagnon, the Supreme Court found a revocation invalid under the Due Process Clause when there was no evidentiary support for finding a condition to be violated. Douglas v. Buder, 412 U.S. 430 (1973) (per curiam). In Douglas, the Supreme Court found that the failure to report a traffic citation being issued could not support a revocation based on a condition requiring the defendant to report "all arrests;" the Supreme Court then deemed the revocation invalid under the Fourteenth Amendment. Id. at 431–42.

In Bearden v. Georgia, 461 U.S. 660 (1983), and then again in Black v. Romano, 471 U.S. 606 (1985), the Supreme Court made clear that neither Morrissey nor Gagnon required a state court to explain why it had rejected alternatives to incarceration when making a determination of a revocation. Those cases also made clear that neither Morrissey nor Gagnon restrict the substantive grounds on which a state court may grant revocation. The Supreme Court in Black reasoned:

> The decision to revoke probation is generally predictive and subjective in nature, Gagnon, 411 U.S. at 787, and the fairness guaranteed by due process does not require a reviewing court to second-guess the factfinder's discretionary decision as to the appropriate sanction. Accordingly, our precedents have sought to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial.

Black, 471 U.S. at 613 (citing Gagnon and Morrissey).

In Black, the Supreme Court recognized and affirmed that the probationer remains "entitled to written notice of the claimed violations of his probation." Id. at 612. A split in the federal

courts of appeals exists over what the nature of the written notice must be. For instance, the United States Court of Appeals for the Ninth Circuit has held that when a revocation petition alleges the commission of a new crime, the defendant is entitled to receive notice of the specific statute he is charged with violating. United States v. Havier, 155 F.3d 1090, 1093 (9th Cir. 1998); see also United States v. Kirtley, 5 F.3d 1110, 1112 (7th Cir. 1993). However, the United States Court of Appeals for the Eighth Circuit explicitly rejected Havier in U.S. v. Sistrunk, 612 F.3d 988 (8th Cir. 2010). In Sistrunk, the Eighth Circuit ruled that "for notice to be effective, it need only assure that the defendant understands the nature of the alleged violation." Id. at 992. The Eighth Circuit in Sistrunk also held that, absent a showing of specific prejudice by failure to cite a statute, a probationer has no basis to assert a constitutional defect in the requisite notice. Id. at 992–93.

The Supreme Court of South Dakota, relying on Morrissey and Gagnon, has reversed a revocation of a suspended imposition of sentence when the revocation was granted on grounds other than those listed in the written notice of violation. McCormick, 385 N.W.2d at 123–24. Thus, it is puzzling why, when Blakney invoked McCormick both before Judge Riepel and in appellate briefing, the Supreme Court of South Dakota did not consider whether the late amendment of the revocation petition coming after testimony of what occurred on October 31, 2014, was procedurally permissible under McCormick.

Because the Supreme Court of South Dakota affirmed summarily without explaining its reasoning, this Court must "look through" the summary affirmance to apply its review under § 2254 to the "last reasoned decision" of the state courts. Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991). As the Eighth Circuit put it in Worthington v. Roper, 631 F.3d 487 (8th Cir. 2011), "when a state appellate court affirms a lower court decision without reasoning, we 'look through' the silent opinion and apply AEDPA review to the 'last reasoned decision' of the state courts." Id. at

497. In doing so, this Court must accord a presumption of correctness to the factual determinations of the state court and must set aside the fact findings only if they "do not enjoy support in the record." Id. at 504, 508 (citation omitted). The "last reasoned decision" here is the oral reasoning of Judge Riepel which includes relying on an expired condition as one ground for revocation and provides scant, if any analysis, of the due process concerns Blakney's counsel was seeking to raise.

## B. Blakney's claims

### 1. Ground two – State court jurisdiction.

With these principles in mind, this Court turns to Blakney's challenges to the revocation of the suspended imposition of sentence. Blakney's first challenge, made in ground two of his § 2254 petition, is that the state court lacked jurisdiction to revoke the suspended sentence after his two-year probationary period ended. Blakney has good reason to challenge revocation of the suspended sentence based on condition number one of his sentence in State CR 11-4924, which required compliance with the conditions of adult probation for a two-year period, because that two-year period had elapsed. The underlying condition number one of the conditions of adult probation requiring generally that for a 24-month period he "obey all federal, tribal, state laws and municipal ordinances" under the sentence originally imposed by Judge Houwman in 2011 had expired by the time of the events of October 31, 2014. The State in its brief to the Supreme Court of South Dakota acknowledged as much in stating "[a]ll parties agreed defendant was on unsupervised probation at the time the State filed the Motion to Revoke Suspended Sentence." Doc. 8-24 at 23. If the state judge had based the revocation strictly on violation of condition one or on some violation of the two-year probationary period in State CR 11-4923, then this Court might be dealing with the situation akin to Douglas, where the record would be "so totally devoid

of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment." 412 U.S. at 432.

However, as early as December 9, 2014, during the evidentiary hearing on the motion to revoke, Judge Riepel raised and the State sought to add additional grounds to justify revocation under conditions twelve and thirteen of Blakney's original sentence in State CR 11-4924. Doc. 8-18 at 37–38. Judge Riepel recessed the evidentiary hearing and later on the record made a ruling that included an intention to revoke the suspended imposition of sentence under conditions twelve and thirteen. Doc. 8-18 at 50–51. Then on April 24, 2015, the State formally amended its motion in writing to list conditions twelve and thirteen as additional grounds for revocation. Neither the original bench order nor the formal order revoking suspended sentence later signed by Judge Riepel list the particular grounds on which she was revoking the suspended imposition of sentence. Doc. 8-20; Doc. 8-21. However, during the hearing on June 12, 2015, Judge Riepel discussed conditions twelve and thirteen, albeit imprecisely and alongside condition one and an implied condition of good behavior, as a basis for her revocation of the suspended imposition of sentence.

Conditions twelve and thirteen of Blakney's original sentence extended conditions and obligations not to commit any class-one misdemeanor or any crime of violence for a period of ten years after he was sentenced. The events of October 31, 2014, occurred within three years of when Blakney was sentenced. The state court did not lack jurisdiction to consider revocation of Blakney for an alleged commission of a class-one misdemeanor or crime of violence within ten years of the sentence being imposed. Thus, Blakney's argument that the state court lacked jurisdiction is mistaken; the issues here center on due process, not a lack of state jurisdiction.

**2. Grounds three and four – Lack of proper notice.**

Blakney's second general argument for habeas relief, set forth in grounds three and four of his § 2254 petition, asserts a due process violation because Blakney received written notice only of violation of condition one and did not receive a preliminary hearing on the alleged violation of conditions twelve and thirteen. Blakney contends that there was a due process violation by Judge Riepel allowing and the State proceeding to change the grounds on which revocation was occurring in the midst of the evidentiary hearing on the motion to revoke on December 9, 2014, and not providing written notice to Blakney until some five months later on April 24, 2015. See Doc. 8-18 at 37–38, 51; Doc. 8-19.

The wellspring of the constitutional right to due process in a revocation proceeding is Morrissey, where the Supreme Court of the United States required, among other things, as "minimum requirements of due process," that a person like Blakney receive "written notice of the claimed violations." Morrissey, 408 U.S. at 489. Building on Morrissey, the Supreme Court in Gagnon required two hearings: 1) a preliminary hearing at the time of arrest and detention to determine if probable cause exists; and 2) "a somewhat more comprehensive hearing prior to the making of the final revocation decision." Gagnon, 411 U.S. at 781–82. Blakney had received an affidavit and order determining probable cause existed for revocation, Doc. 8-14, and an advising hearing concerning the revocation, Doc. 8-17, but both of those occurred during a time when only condition one was alleged to be violated. The hearing on December 9, 2014, was the "somewhat more comprehensive hearing prior to the making of the final revocation decision," see Gagnon, 411 U.S. at 781–82, where Blakney was present, had an opportunity to confront and cross-examine adverse witnesses, and had an opportunity to present additional evidence. Only after presentation of testimony did Judge Riepel suggest and the State express interest in amending the grounds for revocation to include violation of paragraphs twelve and thirteen. However, there was no

20

preliminary hearing on conditions twelve and thirteen or on any alleged violation of the implied condition of good behavior under South Dakota law.

The Supreme Court of South Dakota, despite Blakney's appeal of the revocation, issued a summary affirmance, so this Court must look through to Judge Riepel's decision made orally on the record as the "last reasoned decision" of the state courts. See Ylst, 501 U.S. at 803–04; Worthington, 631 F.3d at 497. Judge Riepel did not provide much reasoning, despite Blakney's counsel invoking McCormick, 385 N.W.2d 121, which had relied on Gagnon and Morrissey to conclude that a suspended imposition of sentence could not be revoked on grounds other than what was listed in the written notice of violation. To be clear, Blakney's counsel did not mention McCormick during the December 9, 2014 hearing, but no issue under McCormick or Morrisey would exist until late during the December 9, 2014 hearing, when Judge Riepel suggested possible amendment of the grounds for revocation of the suspended sentence. As far as this Court can tell, Blakney's counsel mentioned McCormick for the first time during the April 24, 2015 hearing. Although Judge Riepel discussed McCormick and its implications during the April 24 and June 5 hearings, she never made an explicit ruling explaining why McCormick did not apply and why there were no due process concerns. Thus, there is no true "last reasoned decision" to which this Court can defer here. If this Court were to apply Eighth Circuit precedent to Blakney's claim, the notice would only have to assure that Blakney understands the nature of the alleged violation and Blakney would have to show specific prejudice by the lack of clarity in the written violation. Sistrunk, 612 F.3d at 992–93.

Blakney has a current state court habeas corpus petition pending, where he is represented by counsel. State CIV 17-2981. A fundamental tenet of federalism in the context of § 2254 cases is that a federal court "should defer action on causes properly within its jurisdiction until the courts

of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Rose, 455 U.S. at 518 (citation omitted). That is because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Rhines v. Weber, 544 U.S. 269, 274 (2005) (quoting Rose, 455 U.S. at 518). The failure of Judge Riepel to more expressly rule—and perhaps even the failure of the Supreme Court of South Dakota to rule other than summarily—on whether due process protections were violated could be due to the claimed ineffective assistance of counsel alleged in Blakney's current state habeas case. See State CIV 17-2981. This case presents a unique circumstance where neither the Supreme Court of South Dakota nor the state trial court truly ruled on a claim, that though raised and exhausted, may have been overlooked due to ineffective assistance of counsel or otherwise. Blakney might amend his current state habeas case or make arguments that could result in some state court ruling that possible violation of due process rights or state procedural rights under McCormick justify relief.[8] Thus, this Court thinks it best to deny without prejudice to refiling the Defendant's motion to dismiss pending resolution of Blakney's state habeas corpus proceeding. In that manner, the state court may be given full and final opportunity to consider whether ineffective assistance of counsel combined with procedural abnormalities contravened Morrissey and Gagnon or the state application of those cases in McCormick.

### 3. Remaining exhausted grounds – sufficiency of evidence.

Blakney's final group of challenges, set forth in grounds six, seven, eight, and nine of his § 2254 petition, assert that there is insufficient evidence to support the grounds for revocation. For

---

[8] To be clear, this Court is not directing how any state court should rule, but discussing a possibility here.

reasons discussed above, Blakney appears to be right with respect to revocation based on condition one, which extended for just a two-year period following Blakney's original sentence. However, that leaves the remaining grounds of revocation including conditions twelve, thirteen, and possibly even an implied condition of good behavior under South Dakota law.[9] Blakney's challenges to sufficiency of the evidence likewise appear to be better directed initially to the state court in the state habeas corpus proceeding at this time. Blakney's arguments of impropriety to revoke on a class-one misdemeanor when he was not convicted of a class-one misdemeanor for what occurred on October 31, 2014, and his related argument that he committed no "crime of violence" implicate interpretation of South Dakota statutes and law, and a revocation based in part on breach of an implied provision of the sentence appears to be a unique creature of South Dakota law. To justify relief in federal court under § 2254, Blakney would have to meet the standard of <u>Douglas v. Buder</u> of showing that the record was "so totally devoid of evidentiary support [that the basis for revocation is] invalid under the Due Process Clause of the Fourteenth Amendment" for this Court to grant relief under these circumstances. <u>Douglas</u>, 412 U.S. at 432. The deferential review by federal courts under § 2254 merits withholding final determination at this time until the state courts conclude review in State CIV 17-2981.

## IV.   Conclusion and Order

For the reasons explained above, it is hereby

ORDERED that Defendants' Motion to Dismiss, Doc. 13, is granted in part with regard to ground two of the Petition, but is denied without prejudice to refiling after the conclusion of State CIV 17-2981.

---

[9] The amended motion to revoke, however, did not assert violation of any such implied condition. State CR 11-4924; Doc. 8-19.

DATED this 27th day of March, 2019.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE