UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER WILLIAM BLAKNEY,<br><br>Plaintiff,<br><br>vs.<br><br>DARIN YOUNG, WARDEN, SOUTH DAKOTA STATE PENITENTIARY; and JASON RAVNSBORG, ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA,<br><br>Defendants. | 4:17-CV-04022-RAL<br><br><br>OPINION AND ORDER DISMISSING CASE |

Plaintiff Christopher William Blakney (Blakney) filed a petition for habeas corpus under

28 U.S.C. § 2254(b) against Darin Young, in his capacity as Warden of the South Dakota State

Penitentiary, and Marty J. Jackley[1], in his capacity as Attorney General of the State of South

Dakota, alleging that his incarceration pursuant to a state court revocation of suspended sentence

violates his constitutional right to due process. Doc. 1. This Court previously granted in part a

motion to dismiss, allowing those claims which Blakney exhausted in state court to proceed in

federal court and dismissing Blakney's remaining unexhausted claims as frivolous. Doc. 11. This

Court then considered the Defendants' motion to dismiss on the merits, obtained state court records

on Blakney's various state criminal and civil filings, and issued an Opinion and Order Granting in

Part Motion to Dismiss. Doc. 18. In that Opinion and Order, this Court discussed at length the

---

[1] Under Federal Rule of Civil Procedure 25(d), the newly elected Attorney General of South Dakota, Jason Ravnsborg, is automatically substituted as the party defendant for former Attorney General Marty Jackley.

procedural history of Blakney's revocation of suspended sentence. Because Blakney had a pending state habeas corpus case that might address issues in this case and because of the deferential nature of federal court review of state court decisions in § 2254 cases, this Court denied without prejudice to renewal part of the Defendants' motion to dismiss. Doc. 18. Blakney's state habeas corpus action now is concluded and not timely appealed, and both parties through recent filings, Docs. 19, 21, 22, are seeking a final decision from this Court. Much of this Opinion and Order duplicates this Court's prior decision as a means of explaining the complicated history of Blakney's case and why this Court must deny § 2254 relief under the circumstances.

## I. Judicial notice of state court files

The parties did not make it easy for this Court to learn the procedural background and history of Blakney's cases. Blakney is proceeding pro se, and the Defendants were very selective about what they filed from the state court record. Part of what the Defendants filed alerted this Court to Blakney's related habeas case against Darin Young filed in state court in 2016, as Minnehaha County civil case 16-859, in which Blakney made claims of a violation of Brady v. Maryland and of an illegal or ambiguous sentence. Doc. 8-27. This Court was interested in the status of Blakney's state court habeas case because of the deferential nature of federal court review of a state court conviction under 28 U.S.C. § 2254, and because of the preference to have state courts correct constitutional defects in state convictions first to avoid the "unseemly" disruption of state judicial proceedings through premature federal court intervention. Rose v. Lundy, 455 U.S. 509, 518 (1982) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). Thus, this Court wanted to see the outcome of Minnehaha County civil case 16-859 to determine whether any state court ruling had granted relief to Blakney or would impact this Court's review.

In seeking out public information on Minnehaha County civil case 16-859, a law clerk for this Court learned of other civil cases filed in state court by Blakney challenging his detention and sentence. The Minnehaha County Clerk of Court then sent to this Court's Clerk of Court all filed pleadings and transcripts in Blakney's two most recent Minnehaha County criminal cases, 11-4923 and 11-4924, as well as all pleadings filed in Minnehaha County civil cases, 16-859, 17-2981, 18-1596, 18-2633. These files are on what is called the "N" drive of the District of South Dakota, not subject to public view in order to protect personal identifying information—names of juveniles, dates of birth of Blakney and possibly others, and addresses—that might appear in some pleadings.[2] These files are public information available through the Minnehaha County Clerk of Court, consisting of pleadings and documents filed by Blakney, the Defendants, the state court (transcripts and orders), and the Minnehaha County State's Attorney.

With Blakney proceeding pro se and with limited records submitted by the Defendants, this Court believed it appropriate to take judicial notice of the state court records now on this Court's "N" drive under Rule 201 of the Federal Rules of Evidence. Under Rule 201(b), the Minnehaha County Clerk of Court's official records of Blakney's criminal and civil cases are "not subject to reasonable dispute" and from a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under Rule 201(c), this Court "may take judicial notice on its own," and under Rule 201(d) may do so "at any stage of the proceeding." Id. 201. Rule 201(e) entitles the parties to be heard on the propriety of taking judicial notice. Id. 201(e). Accordingly, this Court, on February 22, 2019, issued an Order, Doc. 16, giving the parties fourteen calendar

---

[2] When citing these materials, this Court will reference the state court criminal or civil case number followed by the date of the pleading or transcript when not otherwise clear from the text of this Opinion and Order. This Court will use "Doc. ___" to reference whether and where in the public CM/ECF system of this Court the document cited may be found.

days within which to object to this Court taking judicial notice of Minnehaha County criminal files 11-4923 and 11-4924, and of Minnehaha County civil files 16-859, 17-2981, 18-1596, and 18-2633. Neither Blakney nor the Defendants objected, so this Court took judicial notice of those state case files in order to fully consider the procedural and substantive background of Blakney's convictions, sentences, revocations, incarceration, and challenges thereto as part of ruling on Blakney's exhausted § 2254 claims. Doc. 18 at 3.

## II. Blakney's state court history

### A. Initial criminal cases and sentences

Blakney's state-court odyssey relating to claims in this § 2254 case began with his indictment in two separate Minnehaha County criminal cases on September 1, 2011. State CR 11-4923; State CR 11-4924. In one case, Blakney was charged with second degree rape allegedly perpetrated on July 16, 2011, of then sixteen-year-old J.K.G. State CR 11-4923. In the other case, Blakney was charged with one count of second-degree rape, one count of aggravated assault, and three counts of simple assault for allegedly raping his girlfriend T.S., threatening her with a boxcutter, and committing other domestic assaults against her, all on August 2, 2011. State CR 11-4924; Doc. 8-1. In both criminal cases, the state's attorney filed a Part II information for habitual offender based on Blakney's four prior felony convictions, including three grand theft convictions in 1996 and 1997, and a possession of controlled substance felony conviction in 2010. State CR 11-4923; State CR 11-4924; Doc. 8-2.

Blakney, with the assistance of counsel, reached a plea agreement to resolve the charges in both of his state criminal cases. Under the plea agreement, Blakney entered an <u>Alford</u> plea.[3]

---

[3] An <u>Alford</u> plea is named after the case of <u>North Carolina v. Alford,</u> 400 U.S. 25 (1970), under which a defendant pleads guilty not upon an admission to the facts of the crime, but admitting that the prosecutor has sufficient evidence to make the charge and obtain a conviction.

Consistent with the plea agreement, the Honorable Robin J. Houwman on November 30, 2011,

accepted Blakney's guilty plea to a class-one misdemeanor in State CR 11-4923 of simple assault

on J.K.G. Judge Houwman sentenced Blakney in State CR 11-4923 on that same date (although

memorialized in a judgment and sentence dated December 29, 2011) to incarceration of 364 days,

suspended upon conditions that Blakney commit no class-one misdemeanors or greater for a period

of two years, commit no violent offenses for a period of two years, have no contact with the victim

for a period of two years, pay certain costs, and comply with terms of a two-year probationary

period. In State CR 11-4924, consistent with the plea agreement, Blakney pleaded guilty before

Judge Houwman on November 30, 2011, to just the aggravated assault count and was sentenced

on the same day. A judgment and sentence dated December 29, 2011, memorializes that Blakney

received in State CR 11-4924 a sentence of thirteen years, suspended on the performance of

fourteen listed conditions. As matters most directly to Blakney's present § 2254 case, condition

one stated:

> 1. That the defendant sign and abide by the standard supervised probation
> agreement with the Court Services Department for twenty-four (24) months.

Doc. 8-3. In turn, paragraph one of the standard supervised probation agreement provided: "You

shall obey all federal, state, and tribal laws and municipal ordinances." Doc. 8-4. Blakney's other

conditions of suspended sentence included that he serve 120 days in the Minnehaha County Jail,

with credit for 97 days previously served, that he pay certain costs and fees, that he submit to drug

and alcohol testing, and that he use no controlled substances. State CR 11-4924; Doc. 8-3. Three

of the final terms for the suspended sentence were the following:

> 11. That the defendant complete any evaluation, counseling, anger management
> or participation in 24/7 program as directed by the Court or the Court Services
> Officer.
> 12. That the defendant commit no class one misdemeanors or greater for a period
> of ten (10) years.

13. That the defendant commit no violent offenses for a period of ten (10) years.

State CR 11-4924; Doc. 8-3. As a consequence of the plea agreement, the charges in the indictment in State CR 11-4923 and in counts one, three, four, and five in State CR 11-4924 were dismissed.

## B. Prior revocation petitions and reversal of imposition of suspended sentence

Blakney faced his first motion to revoke suspended sentence on January 17, 2012, based on a violation report concerning a positive test for methamphetamine use. State CR 11-4923; State CR 11-4924. That motion to revoke suspended sentence, however, was dismissed on January 25, 2012. State CR 11-4923; State CR 11-4924.

With regard to State CR 11-4924 only, Blakney faced a second motion to revoke suspended sentence filed on November 14, 2012. State CR 11-4924; Doc. 8-5. The violation report set forth that Blakney had completed an assessment at Compass Center, and his probation officer had directed him to follow a recommendation to participate in a sex offender program, but Blakney had refused to do so. State CR 11-4924; Doc. 8-5. On April 20, 2013, the Honorable Patricia Riepel revoked Blakney's suspended sentence due to his failure to complete a sex offender evaluation and imposed the suspended sentence of thirteen years with credit for 196 days served. State CR 11-4924; Doc. 8-6. Blakney appealed the revocation of his sentence to the Supreme Court of South Dakota. Doc. 8-7. The Supreme Court of South Dakota split 3-2 with the majority voting to reverse the revocation of the suspended sentence because there was no condition in his sentence that Blakney undergo sex offender evaluation or attend a sex offender program and because there consequently had been an improper delegation of sentencing authority to a probation officer to impose such conditions on Blakney after sentencing. State v. Blakney, 851 N.W.2d 195, 199–200 (S.D. 2014); Doc. 8-12. The two dissenting justices believed that Blakney had failed to adequately preserve the issue below. Blakney, 851 N.W.2d at 200–01; Doc. 8-12.

Judge Riepel on remand entered an order vacating the revocation of the suspended sentence on July 30, 2014. State CR 11-4924; Doc. 8-13. Blakney had been in state custody during the pendency of that revocation and appeal. By July 30, 2014, more than two years had passed since Judge Houwman had sentenced Blakney back on November 30, 2011, and since Judge Houwman signed the judgment on December 29, 2011. Blakney likely had completed his initial 120-day sentence around December 29, 2011. Under South Dakota law, Blakney's probationary period in State CR 11-4923 and under condition one of the conditions of suspended sentence in State CR 11-4924 apparently had run by July 30, 2014. See SDCL § 23A-27-19.1 (listing circumstances under which probationary periods may be tolled, but not listing as a circumstance time a defendant sits in custody prior to a reversal of an improper imposition of suspended sentence); see also Doc. 8-24 at 23 (State appellate brief acknowledging Blakney on "unsupervised probation" after two-year period ran).

### C. Current revocation of suspended sentence

The State revoked Blakney's suspended sentence a second time due to Blakney's behavior on October 31, 2014. There is no dispute of material fact as to what occurred on October 31, 2014, but Blakney raises issues of due process and sufficiency of the evidence to support revocation of his suspended sentence.

The initial procedural oddity with Blakney's most recent revocation of suspended sentence relates to the condition initially alleged to have been violated. In State CR 11-4924, the motion to revoke suspended sentence attached a violation report contending that Blakney had violated the first paragraph of the conditions of adult probation that "[y]ou shall obey all federal, tribal, state laws, and municipal ordinances." Doc. 8-16. The terms of adult probation, however, were incorporated into conditions of Blakney's suspended sentence pursuant to paragraph one of the

judgment and sentence imposed on November 30, 2011, and formalized in writing on December 29, 2011—that Blakney "abide by the standard supervised probation agreement with the Court Services Department for twenty-four (24) months." Doc. 8-3. The behavior on October 31, 2014, fell outside of the 24-month period regardless of whether it began on November 30, 2011, or on December 29, 2011. See SDCL § 23A-27-19.1 (not listing time spent serving sentence later vacated as tolling probationary period).

Judge Riepel again presided over the motion to revoke the suspended sentence and appointed counsel for Blakney. The state court held an advising and bond hearing on November 10, 2014, advising Blakney of the allegation that his arrest on October 31, 2014, for simple assault and driving while revoked was a violation of condition one of his release. Doc. 8-17. Blakney denied the violation, and an evidentiary hearing on the motion to revoke suspended sentence occurred on December 9, 2014. At that hearing Blakney's counsel argued that the condition alleged for revocation of the suspended sentence—that he abide by conditions of probation for 24 months, which in turn required obeying all state laws and municipal ordinances—did not apply to him in October of 2014. Blakney appears to have first raised that issue after Judge Riepel heard testimony from the three witnesses at the revocation hearing. See Doc. 8-18 at 35–37.

Again, there is little factual dispute about what occurred on October 31, 2014, and most of the testimony during the December 9, 2014 hearing was not contested. In October of 2014, Blakney was living with Sharrie Kilmer in a household that included her 17-year-old daughter D.K. During the morning of October 31, 2014, Kilmer was getting ready for work, and Blakney became angry with her.[4] Kilmer had moved from her bedroom into the bathroom, and Blakney

---

[4] Kilmer during the evidentiary hearing could not recall why there was an argument. While speaking with police on October 31, 2014, however, Kilmer said that the argument started when Blakney probed why she had missed a meeting with a counselor, heard Kilmer explain that she

had followed her, continuing to argue in a raised voice. Kilmer's daughter, D.K., who had seen Blakney be physical with her mother previously, chose to go into the bathroom to be with her mother.[5] Blakney told D.K. to get out of the bathroom, and as D.K. put it, she copped an attitude by saying "whatever." Blakney jumped up from where he was sitting on the toilet and confronted D.K. saying "what did you say to me?" D.K. then left the bathroom and was in the process of shutting the door with her fingers in the area where the door knob was, with the bulk of her hand on the outside portion of the door and the ends of her fingers on the inside portion of the door. Meanwhile, Blakney turned away from the door to face Kilmer and continue the argument. Blakney then horse kicked the bathroom door with his back to it. The door slammed shut on D.K.'s fingers, and she screamed in pain. Blakney was immediately apologetic saying that he did not mean to hurt her. Blakney did not hit Kilmer that day. D.K. went to the emergency room because her fingers were badly bruised, although they were not broken. Lincoln County Sheriff's Deputy E.J. Colshan arrested Blakney on a simple assault charge after Blakney had left for work that day. Deputy Colshan learned that Blakney was driving with a license that was revoked[6] and cited him on that offense as well. After receiving a Miranda warning, Blakney spoke voluntarily with Deputy Colshan and confirmed what had occurred.

Following this testimony at the hearing on the motion to revoke, Blakney had no witnesses. Doc. 8-18 at 33. The State argued that condition one had been violated by Blakney acting recklessly to commit simple assault and driving with a revoked license, both of which would be

---

had called the counselor to cancel the meeting, then learned by reviewing Kilmer's phone log that she had not in fact called the counselor, and thereafter confronted Kilmer about lying to him.

[5] There was a house rule about only smoking in the bathroom, and Blakney's counsel suggested that D.K. came into the bathroom to smoke a cigarette.

[6] Judge Riepel later determined that she could not accept Deputy Colshan's testimony about Blakney's license being revoked because it was hearsay being offered for the truth of the matter asserted. Doc. 8-18 at 40.

state or municipal law violations. Doc. 8-18 at 33–34. Blakney's counsel countered that the two-year period applicable to condition one had expired and that no violation could be found. Doc. 8-18 at 35–36. Judge Riepel then raised the possibility of the State amending the grounds of the motion to revoke to include grounds other than violation of condition one, the State sought to do so, and Blakney's counsel objected. Doc. 8-18 at 37–38. Judge Riepel offered Blakney an opportunity to call other witnesses. Doc. 8-18 at 40–41. Blakney's counsel objected based on a due process violation and argued that Blakney kicking the door was not a criminal offense and that regardless no class-one misdemeanor conviction nor a violent offense conviction supported revocation of the suspended sentence based on condition number twelve or thirteen (two of the additional grounds suggested for revocation). Doc. 8-18 at 45–49. Judge Riepel explained why she thought there was a basis for Blakney's conduct to be a class-one misdemeanor and deemed simple assault to have been committed under SDCL § 22-18-1(2) by recklessly causing bodily injury. Doc. 8-18 at 49–51. Judge Riepel ruled that Blakney violated an implied condition of good behavior for a suspended sentence[7] and conditions twelve and thirteen of the conditions of suspension of the sentence. Doc. 8-18 at 51. Judge Riepel deferred ruling on whether driving while having a revoked license could support revocation. Doc. 8-18 at 51–52.

Although the evidentiary hearing on the motion to revoke concluded on December 9, 2014, with an apparent decision from Judge Riepel to revoke the suspended imposition of sentence based on violations of paragraphs one, twelve, and thirteen of the prior judgment and an implied condition of good behavior, the formal amended motion to revoke suspended sentence was not filed until April 24, 2015. State CR 11-4924; Doc. 8-19. The underlying criminal file, State CR

---

[7] Judge Riepel was drawing this implied condition from state decisions such as In re Adams, 360 N.W.2d 513 (S.D. 1985), and State v. Holter, 340 N.W.2d 691 (S.D. 1983).

11-4924, reflects that after the December of 2014 evidentiary hearing, Judge Riepel held additional

hearings on April 24, 2015; June 5, 2015; and June 12, 2015. State CR 11-4924. The hearings on

April 24 and June 5 were relatively brief and non-evidentiary, and the sentencing on the revocation

of the suspended sentence occurred on June 12, 2015. Blakney did not seek to present any

witnesses or new evidence at any of those hearings.

At the June 12 sentencing hearing, Blakney's attorney and Judge Riepel had a discussion

about the basis on which Judge Riepel was revoking the suspended imposition of sentence.

Blakney's counsel and Judge Riepel differed on whether the specific violations were addressed at

the evidentiary hearing, and whether Blakney was aware that the State was proceeding to allege

violations of conditions twelve and thirteen of the suspended imposition of sentence at the time of

the evidentiary hearing. Judge Riepel summarized her prior ruling and her reasoning as follows:

> So it's a strict violation of probation based upon what I found at the hearing
> [on December 9, 2014], violation of condition number 1, obey all state and federal
> laws. I further found that he violated the other conditions of his probation,
> subsection 12 and 13.
> Now, the Supreme Court can say one of two things, that because the State
> didn't put 13 and 14 [sic, should be 12 and 13] in that initial motion that the Court
> couldn't have made a ruling on that. I'm still saying that I am entitled to find him
> in violation of the law based on the fact that he is on probation and he's required to
> obey all laws and I think that's the way it is.
> The fact that he now – the State had filed an amendment and you're asking
> me to recuse myself, I'm going to deny that. We have had a contested hearing and
> I have sat on the case and I am going to proceed on the case.

State CR 11-4924, June 12, 2015 sentencing, at 9. Blakney's counsel argued that there were no

convictions from Lincoln County for any of Blakney's behavior on October 31, 2014, and Judge

Riepel responded by questioning whether there was a need for an actual conviction to revoke the

suspended imposition of sentence. Id. at 23.

Judge Riepel signed a bench-order judgment of conviction and penitentiary sentence on

June 12, 2015, imposing the thirteen-year sentence, with 898 days credited; Judge Riepel entered

a formal order revoking suspended sentence then on June 30, 2015. Doc. 8-20; Doc. 8-21. Blakney filed a notice of appeal. Doc. 8-22.

Blakney's appeal from this second revocation of suspended sentence to the Supreme Court of South Dakota included arguments by Blakney's counsel that Judge Riepel's handling of the revocation of the suspended sentence violated Blakney's due process rights in several respects. Doc. 8-23; Doc. 8-25. The State in its brief acknowledged that "[a]ll parties agreed defendant was on unsupervised probation at the time the State filed the Motion to Revoke Suspended Sentence." Doc. 8-24 at 23. That is, the State effectively acknowledged that Blakney's formal two-year period of probation had run under the conditions of adult probation and condition one of the sentence in State CR 11-4924. The State argued that nevertheless, under conditions twelve and thirteen, there were grounds to revoke the suspended sentence. Doc. 8-24. The Supreme Court of South Dakota affirmed summarily without opinion on November 14, 2016. Doc. 8-26.

### D. Blakney's State post-sentence civil cases

Blakney has filed a number of civil cases in state court challenging and concerning his convictions and sentences. In State CIV 16-859, Blakney filed a state court habeas corpus petition contending that his conviction on State CR 11-4923 was based on a Brady violation. In connection with that case, Blakney filed a copy of an email dated August 26, 2011, ostensibly sent by the sixteen-year-old alleged rape victim, J.K.G., reading "I need to know how to go about to drop all charges on cgris [sic] blakney . . it was consentual [sic] sex." For the sake of context, the grand jury indictment was dated September 1, 2011, and reflected that J.K.G. testified to the grand jury. This Court of course does not know if J.K.G. did or did not author that email. The Honorable Joseph Neiles declined to grant state habeas relief because the probationary time on the simple assault conviction arising from State CR 11-4923 had run, and the habeas corpus filing was not in

12

front of the original judge and did not name the warden. Judge Neiles noted as well that the State was asserting that the victim either did not send the email or recanted its claims. State CIV 16-859.

Blakney then brought a similar claim in State CIV 18-1596 as a writ of coram nobis to the original sentencing judge, Judge Houwman. Judge Houwman denied the writ, writing "[r]egardless of whether the prosecutor possessed this email or whether it should have been disclosed to the defense, Petitioner plead guilty to Simple Assault, not the original Rape charge." Blakney attempted to appeal from the denial of writ of coram nobis. It appears that the appeal was dismissed for improper service of the notice of appeal. State CIV 18-1596.

Blakney also has filed a civil case, State CIV 18-2633, that challenges the parole board's determination of his initial parole eligibility date. That administrative appeal does not impact the issues in this § 2254 case.

As it relates to Blakney's issues surrounding his revocation of the suspended imposition of sentence, Blakney filed a state court petition for writ of habeas corpus as State CIV 17-2981. There, Blakney alleges ineffective assistance of counsel and that his sentence was ambiguous and internally contradictory in violation of his Fifth and Fourteenth Amendment rights to due process. That state habeas case proceeded slowly, with delays in the appointment and then recusal of counsel for Blakney. When this Court entered the Opinion and Order Granting in Part Motion to Dismiss on March 27, 2019, Doc. 18, the state court case CIV 17-2981 remained at the state trial court level. In denying without prejudice part of the Defendants' motion to dismiss, this Court reasoned:

> Blakney has a current state court habeas corpus petition pending, where he is represented by counsel. State CIV 17-2981. A fundamental tenet of federalism in the context of § 2254 cases is that a federal court "should defer action on causes properly within its jurisdiction until the courts of another sovereignty with

concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Rose, 455 U.S. at 518 (citation omitted). That is because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Rhines v. Weber, 544 U.S. 269, 274 (2005) (quoting Rose, 455 U.S. at 518). The failure of Judge Riepel to more expressly rule—and perhaps even the failure of the Supreme Court of South Dakota to rule other than summarily—on whether due process protections were violated could be due to the claimed ineffective assistance of counsel alleged in Blakney's current state habeas case. See State CIV 17-2981. This case presents a unique circumstance where neither the Supreme Court of South Dakota nor the state trial court truly ruled on a claim, that though raised and exhausted, may have been overlooked due to ineffective assistance of counsel or otherwise. . . . Thus, this Court thinks it best to deny without prejudice to refiling the Defendant's motion to dismiss pending resolution of Blakney's state habeas corpus proceeding. In that manner, the state court may be given full and final opportunity to consider whether ineffective assistance of counsel combined with procedural abnormalities contravened [certain federal and state precedent on Due Process rights on revocation proceedings].

Doc. 18 at 21–22.

This Court recently learned that on October 11, 2019, a state circuit court judge in State CIV 17-2981 signed a Decision Concerning Motion to Dismiss, Doc. 21-1, and an Order Dismissing Habeas Corpus Action with Prejudice, Doc. 21-2. The state court judge deemed the doctrines of res judicata and collateral estoppel to bar relief and did not address the merits of any claim raised by Blakney. Blakney's counsel thereafter withdrew a certificate of probable cause, and no appeal from that dismissal occurred. Doc. 21-3.

Both Blakney and Defendants have filed pleadings by which they now seek a final decision from this Court. Docs. 19, 21, 22. Blakney has filed motions for immediate release, Docs. 19, 22; Defendants filed a response to Blakney's motion upon being ordered by this Court to do so, Docs. 20, 21, which this Court interprets as renewal of the Defendants' motion to dismiss all of Blakney's remaining claims.

## III. Discussion

14

This Court previously ruled that Blakney exhausted grounds two, three, four, six, seven, eight, and nine of his § 2254 habeas corpus petition. Doc. 11. Those seven exhausted claims can be grouped as raising three general challenges: 1) that the state court lacked jurisdiction and thus offended due process by proceeding to revoke Blakney's suspended sentence after the two-year probationary period ended; 2) that the state court violated due process by proceeding on condition one (which had expired) and not conducting a preliminary hearing on conditions twelve and thirteen later used by the state court to revoke the suspended sentence; and 3) that there was constitutionally insufficient evidence to conclude that Blakney had violated any of the conditions, let alone committed a class-one misdemeanor or a violent offense under conditions twelve and thirteen.

## A. Applicable law

When a claim has been adjudicated on the merits in a state court, a petition for writ of habeas corpus under § 2254 cannot be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To make a showing that a state court made an unreasonable determination of the facts, a petitioner must present clear and convincing evidence that "the state court's presumptively correct factual finding lacks evidentiary support." Trussell v. Bowersox, 447 F.3d 588, 591 (8th Cir. 2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) present distinct questions. Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 404–05 (2000)). A state court's legal determination is contrary to federal law if it reaches the opposite

conclusion of the Supreme Court on a question of law, or if, when confronting materially indistinguishable facts as a case decided by the Supreme Court, it reaches a different conclusion. Williams, 529 U.S. at 405. If a state court correctly identifies the controlling legal principle, but applies it to the facts of a case in an unreasonable manner, then the decision runs afoul of the "unreasonable application" clause of § 2254(d)(1). Id. at 407–08. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Williams, 529 U.S. at 410). This is a "highly deferential standard" that is "difficult to meet." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). Evaluation of a state court's application of federal law focuses on "what a state court knew and did . . . measured against [the Supreme] Court's precedents as of 'the time the state court render[ed] its decision.'" Id. at 182 (quoting Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003)). "If a claim has been adjudicated on the merits by a state court," a federal habeas petitioner must show the state court's legal determination was deficient "on the record that was before that state court." Id. at 185.

Blakney has a right to due process in proceedings about whether he violated conditions of his suspended imposition of sentence. A series of cases from the Supreme Court of the United States, beginning with Morrissey v. Brewer, 408 U.S. 471 (1972), recognize a due process right during such revocation proceedings. Most recently, the Supreme Court of the United States has characterized the right as follows:

> There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures.

Swarthout v. Cooke, 562 U.S. 216, 220 (2011) (per curiam); see Black v. Romano, 471 U.S. 606, 610 (1985) ("The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation."). Although the Supreme Court decisions typically have dealt with revocations of probation or parole, the revocation of a suspended imposition of sentence, as occurs under South Dakota procedure, is substantially similar and governed by the same principles. See, e.g., State v. McCormick, 385 N.W.2d 121, 123–24 (S.D. 1986) (applying principles of Morrissey to revocation of suspended imposition of sentence in South Dakota).

In Morrissey, the Supreme Court deemed the "minimum requirements of due process" in a revocation proceeding to include: (a) written notice of the claimed violation to the individual; (b) disclosure to the individual of evidence against him; (c) the opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses; (e) a neutral and detached hearing body or judge; and (f) a written statement by the fact finder as to the evidence relied on and the reasons for the revocation. Morrissey, 408 U.S. at 489; see Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973). In Gagnon, decided one year after Morrissey, the Supreme Court recognized that a person facing revocation was entitled to two hearings: 1) a preliminary hearing at the time of the arrest and detention to determine if probable cause exists for the revocation; and 2) a "somewhat more comprehensive hearing prior to the making of the final revocation decision." Gagnon, 411 U.S. at 781–82. "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." Id. at 781 (quoting Morrissey, 408 U.S. at 480). Therefore, the Supreme Court has made clear that a person facing revocation is not due a "full panoply of rights." Morrissey, 408 U.S. at 480.

The same year that the Supreme Court decided Gagnon, the Supreme Court found a revocation invalid under the Due Process Clause when there was no evidentiary support for finding a condition to be violated. Douglas v. Buder, 412 U.S. 430 (1973) (per curiam). In Douglas, the Supreme Court found that the failure to report a traffic citation being issued could not support a revocation based on a condition requiring the defendant to report "all arrests;" the Supreme Court then deemed the revocation invalid under the Fourteenth Amendment. Id. at 431–32.

In Bearden v. Georgia, 461 U.S. 660 (1983), and then again in Black v. Romano, 471 U.S. 606 (1985), the Supreme Court made clear that neither Morrissey nor Gagnon required a state court to explain why it had rejected alternatives to incarceration when making a determination of a revocation. Those cases also made clear that neither Morrissey nor Gagnon restrict the substantive grounds on which a state court may grant revocation. The Supreme Court in Black reasoned:

> The decision to revoke probation is generally predictive and subjective in nature, Gagnon, 411 U.S. at 787, and the fairness guaranteed by due process does not require a reviewing court to second-guess the factfinder's discretionary decision as to the appropriate sanction. Accordingly, our precedents have sought to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial.

Black, 471 U.S. at 613 (citing Gagnon and Morrissey).

In Black, the Supreme Court recognized and affirmed that the probationer remains "entitled to written notice of the claimed violations of his probation." Id. at 612. Federal courts of appeals have differed over what the nature of the written notice must be to afford due process. For instance, the United States Court of Appeals for the Ninth Circuit has held that when a revocation petition alleges the commission of a new crime, the defendant is entitled to receive notice of the specific statute he is charged with violating. United States v. Havier, 155 F.3d 1090, 1093 (9th Cir. 1998); see also United States v. Kirtley, 5 F.3d 1110, 1112 (7th Cir. 1993). However, the United States

Court of Appeals for the Eighth Circuit adopted a less stringent standard in United States v. Sistrunk, 612 F.3d 988 (8th Cir. 2010). In Sistrunk, the Eighth Circuit ruled that "[f]or notice to be effective, it need only assure that the defendant understands the nature of the alleged violation." Id. at 992. The Eighth Circuit in Sistrunk also held that, absent a showing of specific prejudice by failure to cite a statute, a probationer has no basis to assert a constitutional defect in the requisite notice. Id. at 992–93.

The Supreme Court of South Dakota, relying on Morrissey and Gagnon, has reversed a revocation of a suspended imposition of sentence when the revocation was granted on grounds other than those listed in the written notice of violation. McCormick, 385 N.W.2d at 123–24. Thus, it is puzzling why, when Blakney invoked McCormick both before Judge Riepel and in appellate briefing, the Supreme Court of South Dakota did not consider whether the late amendment of the revocation petition coming after testimony of what occurred on October 31, 2014, was procedurally permissible under McCormick.

Because the Supreme Court of South Dakota affirmed summarily without explaining its reasoning, this Court must "look through" the summary affirmance to apply its review under § 2254 to the "last reasoned decision" of the state courts. Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991). As the Eighth Circuit put it in Worthington v. Roper, 631 F.3d 487 (8th Cir. 2011), "when a state appellate court affirms a lower court decision without reasoning, we 'look through' the silent opinion and apply AEDPA review to the 'last reasoned decision' of the state courts." Id. at 497. In doing so, this Court must accord a presumption of correctness to the factual determinations of the state court and must set aside the fact findings only if they "do not enjoy support in the record." Id. at 504, 508 (citation omitted). The "last reasoned decision" here is the oral reasoning

of Judge Riepel which includes relying on an expired condition as one ground for revocation and provides scant, if any, analysis of the due process concerns Blakney's counsel was seeking to raise.

## B. Blakney's claims

### 1. Ground two – State court jurisdiction

With these principles in mind, this Court turns to Blakney's fully exhausted challenges to the revocation of the suspended imposition of sentence. Blakney's first such challenge, made in ground two of his § 2254 petition, is that the state court lacked jurisdiction to revoke the suspended sentence after his two-year probationary period ended. Blakney has good reason to challenge revocation of the suspended sentence based on condition number one of his sentence in State CR 11-4924, which required compliance with the conditions of adult probation for a two-year period. The underlying condition number one of the conditions of adult probation requiring generally that for a 24-month period he "obey all federal, state, and tribal laws and municipal ordinances" under the sentence originally imposed by Judge Houwman in 2011 had expired by the time of the events of October 31, 2014. The State in its brief to the Supreme Court of South Dakota acknowledged as much in stating "[a]ll parties agreed defendant was on unsupervised probation at the time the State filed the Motion to Revoke Suspended Sentence." Doc. 8-24 at 23. If the state judge had based the revocation strictly on violation of condition one or on some violation of the two-year probationary period in State CR 11-4923, then this Court would be dealing with the situation akin to Douglas, where the record would be "so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment." 412 U.S. at 432.

However, as early as December 9, 2014, during the evidentiary hearing (albeit after testimony) on the motion to revoke, Judge Riepel raised and the State sought to add additional grounds to justify revocation under conditions twelve and thirteen of Blakney's original sentence

in State CR 11-4924. Doc. 8-18 at 37–38. Judge Riepel recessed the evidentiary hearing and later on the record made a ruling that included an intention to revoke the suspended imposition of sentence under conditions twelve and thirteen. Doc. 8-18 at 50–51. Then on April 24, 2015, the State formally amended its motion in writing to list conditions twelve and thirteen as additional grounds for revocation. Neither the original bench order nor the formal order revoking suspended sentence later signed by Judge Riepel list the particular grounds on which she was revoking the suspended imposition of sentence. Doc. 8-20; Doc. 8-21. However, during the hearing on June 12, 2015, Judge Riepel discussed conditions twelve and thirteen, albeit imprecisely and alongside condition one and an implied condition of good behavior, as a basis for her revocation of the suspended imposition of sentence.

Conditions twelve and thirteen of Blakney's original sentence extended conditions and obligations not to commit any class-one misdemeanor or any crime of violence for a period of ten years after he was sentenced. The events of October 31, 2014, occurred within three years of when Blakney was sentenced. As this Court previously ruled, Doc. 18, the state court did not lack jurisdiction to consider revocation of Blakney for an alleged commission of a class-one misdemeanor or crime of violence within ten years of the sentence being imposed. Thus, Blakney's argument that the state court lacked jurisdiction is mistaken; the issues here center on due process, not a lack of state jurisdiction.

### 2. Grounds three and four – Lack of proper notice

Blakney's second fully exhausted general argument for habeas relief, set forth in grounds three and four of his § 2254 petition, asserts a due process violation because Blakney received written notice only of violation of condition one and did not receive a preliminary hearing on the alleged violation of conditions twelve and thirteen. Blakney contends that there was a due process

violation by Judge Riepel allowing and the State then changing the grounds on which revocation was occurring in the midst of the evidentiary hearing on the motion to revoke on December 9, 2014, and not providing written notice to Blakney of alleged violations of conditions twelve and thirteen until some five months later on April 24, 2015. See Doc. 8-18 at 37–38, 51; Doc. 8-19.

The wellspring of the constitutional right to due process in a revocation proceeding is Morrissey, where the Supreme Court of the United States required, among other things, as "minimum requirements of due process," that a person like Blakney receive "written notice of the claimed violations." Morrissey, 408 U.S. at 489. Building on Morrissey, the Supreme Court in Gagnon required two hearings: 1) a preliminary hearing at the time of arrest and detention to determine if probable cause exists; and 2) "a somewhat more comprehensive hearing prior to the making of the final revocation decision." Gagnon, 411 U.S. at 781–82. Blakney had received an affidavit and order determining probable cause existed for revocation, Doc. 8-14, and an advising hearing concerning the revocation, Doc. 8-17, but both of those occurred during a time when only condition one was alleged to be violated. The hearing on December 9, 2014, was the "somewhat more comprehensive hearing prior to the making of the final revocation decision," Gagnon, 411 U.S. at 782, where Blakney was present, had an opportunity to confront and cross-examine adverse witnesses, and had an opportunity to present additional evidence. Only after presentation of testimony did Judge Riepel suggest and the State express interest in amending the grounds for revocation to include a violation of conditions twelve and thirteen of Blakney's sentence in State CR 11-4924. However, there was no preliminary hearing on conditions twelve and thirteen or on any alleged violation of the implied condition of good behavior under South Dakota law.

The Supreme Court of South Dakota, despite Blakney's appeal of the revocation, issued a summary affirmance, so this Court must look through to Judge Riepel's decision made orally on

the record as the "last reasoned decision" of the state courts. See Ylst, 501 U.S. at 803–04; Worthington, 631 F.3d at 497. Judge Riepel did not provide much reasoning, despite Blakney's counsel invoking McCormick, 385 N.W.2d 121, where the Supreme Court of South Dakota had relied on Gagnon and Morrissey to conclude that a suspended imposition of sentence could not be revoked on grounds other than what was listed in the written notice of violation. To be clear, Blakney's counsel did not mention McCormick during the December 9, 2014 hearing, but no issue under McCormick or Morrisey would exist until late during the December 9, 2014 hearing, when Judge Riepel suggested possible amendment of the grounds for revocation of the suspended sentence after receiving the testimony. Blakney's counsel first mentioned McCormick during the April 24, 2015 hearing. Although Judge Riepel mentioned McCormick and its implications during the April 24 and June 5 hearings, she never made an explicit ruling about why McCormick did not apply and why there were no due process concerns. Thus, there is no true "last reasoned decision" on the alleged due process violation to which this Court can defer here.

With no true "last reasoned decision" from any state court to defer to, this Court is left with determining whether under Morrissey and its progeny Blakney was deprived of his due process rights when grounds other than what was listed in the initial written notice of violation ultimately became a basis for imposition of the suspended sentence. The Eighth Circuit decision in Sistrunk guides this Court's analysis. In Sistrunk, a petition to revoke federal supervised release described the facts of the alleged violation but referenced generally the condition violated—that Sistrunk not commit another federal, state, or local crime—without identifying what specific new crime Sistrunk allegedly committed. 612 F.3d at 990. After an evidentiary hearing, the district court found that the government had met its burden of proving Sistrunk schemed to fraudulently obtain fake identification cards. Id. at 990–91. Sistrunk then moved to dismiss the petition because the

23

government had failed to identify any specific laws violated and thus violated Sistrunk's due process rights. Id. at 991. The district court recessed the hearing to allow the government to determine what laws Sistrunk allegedly violated through obtaining phony identification cards. Id. One week later, the district court reconvened the hearing at which time the government identified what federal and state law Sistrunk contravened, and the district court found both that Sistrunk had violated at least a state statute and that Sistrunk's due process rights had not been violated. Id.

The United States Court of Appeals for the Eighth Circuit in Sistrunk affirmed the district court on appeal. The Eighth Circuit distinguished the Ninth-Circuit decision in Havier where the petition to revoke alleged vaguely an offense with the element of imminent "life-threatening danger to law enforcement personnel" and where Havier had a legitimate argument that the absence of notice of what statute he violated caused him prejudice in how he would have handled the evidentiary hearing. Havier, 155 F.3d at 1092–93; see Sistrunk, 612 F.3d at 991–92. The Eighth Circuit in Sistrunk noted that Sistrunk, unlike in Havier, had "failed to show how the lack of citation to a specific statute harmed his ability to defend against the alleged violations." Sistrunk, 612 F.3d at 992. While acknowledging that citation to the alleged statutory violation is "the better practice," the Eighth Circuit, noting that the petition provided extensive factual allegations of Sistrunk's wrongful behavior, stated "[f]or notice to be effective, it need only assure that the defendant understands the nature of the alleged violation."

Blakney's situation falls between the facts of Sistrunk and Havier, but ultimately is closer to Sistrunk. Blakney has made no argument, as the defendant in Havier did, that he or counsel would have handled cross-examination or witnesses differently if informed prior to the evidentiary hearing that conditions twelve and thirteen might become the basis for the revocation of his suspended sentence. Blakney became aware of those additional grounds toward the end of the

24

December 9, 2014 hearing, but did not present any additional evidence then, or at the hearing on April 24, 2015, after the petition was formally amended or at the hearings on June 5 and 12, 2015. Indeed, there is a parallel between what the district court in Sistrunk did in finding Sistrunk to have acted fraudulently, then hearing Sistrunk's motion to dismiss for lack of due process in identifying what laws were contravened, recessing the hearing, and reconvening later to allow the government to identify what laws Sistrunk violated. Judge Riepel acted similarly in making a preliminary factual finding, then hearing the due process argument and suggesting that Blakney violated other conditions, recessing the hearing, and reconvening hearings in April of 2015 and twice in June of 2015. While Blakney's revocation was at best messy, Blakney—certainly by the time of the amendment of the petition on April 24, 2015—had received effective notice to "assure that the defendant understands the nature of the alleged violation." Sistrunk, 612 F.3d at 992. Blakney's revocation may or may not have accorded with state law precedent under McCormick, but this Court cannot conclude that Blakney's constitutional due process rights under Morrisey and its progeny were violated, and Sistrunk leads this Court to deny § 2254 relief.

### 3. Remaining exhausted grounds – sufficiency of evidence

Blakney's final group of fully exhausted challenges, set forth in grounds six, seven, eight, and nine of his § 2254 petition, assert that there is insufficient evidence to support the grounds for revocation. For reasons discussed above, Blakney is right with respect to revocation based on condition one, which extended for just a two-year period following Blakney's original sentence. However, that leaves the remaining grounds of revocation including conditions twelve and thirteen. Judge Riepel had referenced the implied condition of good behavior under South Dakota law, but the amended motion to revoke did not assert violation of any such implied condition. State CR 11-4924; Doc. 8-19. Thus, the question is the constitutional sufficiency of the evidence

to justify revocation for violating condition twelve ("no class one misdemeanors or greater for a period of ten (10) years") or condition thirteen ("no violent offenses for a period of ten (10) years"). State CR 11-4924; Doc. 8-3.

Unlike on Blakney's due process argument, Judge Riepel made some factual findings impacting Blakney's arguments of impropriety to revoke on a class-one misdemeanor when he was not convicted of a class-one misdemeanor for what occurred on October 31, 2014, and his related argument that he committed no "crime of violence." Judge Riepel explained why she believed Blakney's conduct in angrily horse kicking the door on October 31, 2014, thereby unwittingly crushing D.K.'s fingers, constituted recklessly causing bodily injury under SDCL § 22-18-1(2). Doc. 8-18 at 49–51. In relevant part, SDCL § 22-18-1(2) as it existed in 2014[8] read: "Any person who: . . . (2) Recklessly causes bodily injury to another . . . is guilty of simple assault. Simple assault is a Class 1 misdemeanor."

To justify relief in federal court under § 2254, Blakney has to meet the standard of Douglas v. Buder of showing that the record was "so totally devoid of evidentiary support [that the basis for revocation is] invalid under the Due Process Clause of the Fourteenth Amendment." Douglas, 412 U.S. at 432. Because of the deferential review by federal courts under § 2254, Blakney must show by clear and convincing evidence that "the state court's presumptively correct factual finding lacks evidentiary support." Trussell, 447 F.3d at 591. This Court cannot conclude that Judge Riepel's application of SDCL § 22-18-1(2) was totally devoid of evidentiary support. Blakney knew that D.K. was in the process of leaving the bathroom, turned his back to D.K., and angrily kicked the door pinching D.K.'s fingers in the door. While the consequences for such a simple

---

[8] The statute was amended in 2019, but is largely identical in providing: "A person is guilty of simple assault, a Class 1 misdemeanor, if the person: . . . (2) Recklessly causes bodily injury to another."

assault are severe based on imposition of the entire suspended sentence, there remains sufficient evidence under the standard of review in § 2254 cases to support Judge Riepel's decision. Because there was a basis under condition twelve of the sentence for the revocation, this Court need not consider whether there also was a basis for revocation for violating condition thirteen. See United States v. Miller, 557 F.3d 910, 915 (8th Cir. 2009) ("Because the District Court did not abuse its discretion in revoking Miller's supervised release based on a violation of Special Condition 8, we need not consider Miller's arguments with respect to Special Condition 9.").[9]

IV.     **Conclusion and Order**

For the reasons explained above, it is hereby

ORDERED that Blakney's motions for release, Docs. 19, 22, are denied and that Defendants' renewed request to dismiss, Doc. 21, is granted.

DATED this __4th__ day of February, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

---

[9]Contrary to Blakney's argument, he has no right to have a jury decide whether he violated condition twelve. Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984) (explaining that there is no right to a jury trial before probation is revoked).